An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1160
NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

 v.

ERNESTO REYNOSA

Graham County
Nos. 12 CRS 360-61; 50484

Appeal by Defendant from judgment entered 20 March 2013 by Judge James U. Downs in Superior Court, Graham County. Heard in the Court of Appeals 29 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Olga Vysotskaya, for the State.*
>
> *Mark Montgomery for Defendant-Appellant.*

McGEE, Judge.

Ernesto Reynosa ("Defendant") appeals from judgment imposed upon jury convictions of two counts of first-degree sex offense with a child and one count of taking indecent liberties with a child. Defendant was sentenced to a minimum term of 192 months and a maximum term of 243 in prison. The sole issue presented by Defendant on appeal is whether the trial court erred by submitting special instructions requested by the State regarding

contradictory or conflicting statements of Defendant. We hold the trial court did not err.

The State's evidence tends to show that Defendant's wife, Melissa Reynosa ("Ms. Reynosa"), had two sons and one daughter before she married Defendant. On 2 December 2012, Ms. Reynosa and her son ("B.R.") returned home. Ms. Reynosa entered her bedroom and saw her daughter ("S.D.") lying on the bed with her panties down to her ankles. Defendant had his face and mouth on S.D.'s vaginal area.

S.D., who was twelve years old at the time of trial, testified that, while her mother was away from the home on 2 December 2012, Defendant had S.D. lie on her mother's bed. Defendant pulled down S.D.'s pants and licked her private parts between her legs. Defendant also pulled up S.D.'s shirt and put his mouth on her breasts.

B.R. testified that, after returning home with his mother on 2 December 2012, he heard his mother screaming at Defendant. He went into his mother's bedroom and saw his sister, S.D., lying on the bed "half naked." Law enforcement officers came to the home later that evening and asked B.R. questions. B.R. told the officers that on an earlier occasion, he had seen Defendant and S.D. in S.D.'s closet. His sister's "pants were down a

little ways" and Defendant was "kissing her below the belly button."

Officer Ethan Henderson ("Officer Henderson") of the Graham County Sheriff's Department arrived at Defendant's home on the evening of 2 December 2012 to investigate, and testified to the following. Officer Henderson stated that Ms. Reynosa reported she walked into her bedroom and saw Defendant "on top of [S.D.] with his head down around her vagina[.]" Ms. Reynosa told him that her daughter's "pants were pulled down and her shirt was pulled up." B.R. told Officer Henderson that on another occasion he had seen Defendant crouched down in front of S.D. in her closet and that S.D.'s pants were down.

Investigator Larry Jenkins ("Investigator Jenkins") of the Graham County Sheriff's Department testified he also visited the Reynosa residence on the evening of 2 December 2012 and collected evidence from the house. Investigator Jenkins interviewed Defendant at the Sheriff's Department later that evening and said Defendant denied that he molested or engaged in sexual activity with S.D.

The next morning, Chief Investigator Milton Teasdale interviewed Defendant at the Sheriff's Department. He said that Defendant initially denied engaging in any sexual activity with

S.D., but later admitted that he "licked" her vaginal area. Defendant also admitted he engaged in sexual activity with S.D. more than once.

At trial, Defendant testified that he did nothing sexual with S.D. on 2 December 2012. He also stated he was coerced into confessing by the law enforcement officers.

During the charge conference, the State requested that the trial court instruct the jury regarding contradictory or conflicting statements of Defendant. The trial court initially denied the request but changed its mind the next morning. Defendant objected to submission of the instruction.

The trial court subsequently instructed the jury as follows:

> Members of the jury, there has – the State contends and . . . [D]efendant denies that he has made contradictory statements, conflicting statements about what allegedly occurred. If you find that he made such statements they may be considered by you as a circumstance tending to reflect the mental process of a person possessed by a guilty conscious [sic], seeking to divert suspicion or to exculpate him. And you should consider that evidence along with all the other believable evidence that you deem to be believable to the extent of beyond a reasonable doubt in accordance with what the State must prove, . . . [D]efendant having no burden to prove anything, that is, the other believable evidence to that extent in this case.

> On the other hand, if you find . . . [D]efendant made such statements, they don't create a presumption of guilt. Such evidence standing alone is not sufficient, is not sufficient to establish guilt.

Defendant argues there are two problems with the instruction: (1) it placed undue emphasis upon Defendant's confession; and (2) it was not supported by the evidence because Defendant did not deny making conflicting statements. We disagree.

The instruction given by the trial court is consistent with an instruction approved by our Supreme Court in *State v. Walker*, 332 N.C. 520, 537, 422 S.E.2d 716, 726 (1992). A trial court properly gives the instruction concerning contradictory statements when the defendant's own statements contradict each other or flatly contradict the evidence. *Id.* at 538, 422 S.E.2d at 726. In this case, Defendant gave contradictory statements to law enforcement officers. Defendant's trial testimony also contradicted what he told law enforcement officers in his confession.

No error.

Judges ELMORE and DAVIS concur.

Report per Rule 30(e).